1   WO

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9   Cari Kravat-Jahner,                        No. CV-13-00142-PHX-BSB

10                  Plaintiff,                  **ORDER**

11  v.

12  Carolyn W. Colvin, Acting Commissioner
    of Social Security,

13
                    Defendant.
14

15          Cari Kravat-Jahner (Plaintiff) seeks judicial review of the final decision of the

16  Commissioner of Social Security (the Commissioner), denying her application for

17  disability insurance benefits under the Social Security Act (the Act).  The parties have

18  consented to proceed before a United States Magistrate Judge pursuant to 28

19  U.S.C. § 636(b) and have filed briefs in accordance with Local Rule of Civil Procedure

20  16.1.  For the following reasons, the Court reverses and remands to the Commissioner for

21  further proceedings.

22  **I.      Procedural Background**

23          In May 2010, Plaintiff applied for disability insurance benefits under Title II of the

24  Act.  42 U.S.C. § 401-434.  (Tr. 24.)[1]  Plaintiff alleged that she had been disabled since

25  May 2008.  (Tr. 24.)  After the Social Security Administration (SSA) denied Plaintiff's

26  initial application and her request for reconsideration, she requested a hearing before an

27  _____

28          [1]  Citations to "Tr." are to the certified administrative transcript of record.
    (Doc. 11.)

1    administrative law judge (ALJ).  After conducting a hearing, the ALJ issued a decision

2    finding Plaintiff not disabled under the Act.  (Tr. 25-34.)  This decision became the final

3    decision of the Commissioner when the Social Security Administration Appeals Council

4    denied Plaintiff's request for review.  (Tr. 1-6); *see* 20 C.F.R. § 404.981 (explaining the

5    effect of a disposition by the Appeals Council.)  Plaintiff now seeks judicial review of

6    this decision pursuant to 42 U.S.C. § 405(g).

7    **II.    Medical Records and Assessments of Plaintiff's Mental Health**

8           The record before the Court establishes the following history of diagnosis and

9    treatment related to Plaintiff's mental health.  The record also includes opinions from a

10   lay witness and state agency physicians who reviewed the records related to Plaintiff's

11   mental health.

12          **A.    Jasbir Bisla, M.D., Treating Psychiatrist**

13          Psychiatrist Jasbir Bisla, M.D., treated Plaintiff first at the Terros Clinic and then

14   in private practice.  (Tr. 251-62, 266-69, 288-90, 293-94, 296-97.)  He first saw Plaintiff

15   in May 2008.  (Tr. 285.)  Dr. Bisla noted that Plaintiff was not taking her medication and

16   that she had become angry and lost a job.  (Tr. 285-86.)  On examination, Dr. Bisla

17   reported that Plaintiff had a dysphoric mood, and that she was alert and oriented, had a

18   good appearance, good eye contact, normal motor activity, an appropriate affect, normal

19   speech, logical thought process, good concentration, intact memory, good intelligence,

20   good insight, and good judgment. (Tr. 285-286.)  Dr. Bisla diagnosed mood and anxiety

21   disorders (Tr. 286-287), assessed a Global Assessment of Functioning (GAF) score of 65

22   (Tr. 285), and prescribed psychiatric medication.[2]  (Tr. 286-287.)

23

24   _____

25          [2]  "A GAF score is a rough estimate of an individual's psychological, social, and
     occupational functioning used to reflect the individual's need for treatment."  *Brewes v.*

26   *Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1160 n.2 (9th Cir. 2012) (quoting *Vargas v.*
     *Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir.1998)).  Plaintiff notes that the latest (fifth)

27   edition of the Diagnostic and Statistical Manual of Mental Disorders has abandoned the
     GAF rating system (Doc. 20-1 at 16), but that does not affect the Court's  decision in this

28   case because the GAF system was used during the relevant period.

Dr. Bisla examined Plaintiff in October 2008.  (Tr. 250-254.)  Plaintiff reported that she had been taking prescribed psychiatric medication, that her psychiatric medications were working well, and that her mood was stable, her anger was under good control, and her panic attacks had subsided — which she attributed to reuniting with her spouse.  (Tr. 251.)   She denied mood, panic, and obsessive compulsive symptoms. (Tr. 251-252.)  Dr. Bisla noted that Plaintiff typically talked rapidly, got angry quickly, and had a labile mood.  (Tr. 253.)

Dr. Bisla next examined Plaintiff in May 2009, noting he had not seen Plaintiff in six months.  (Tr. 255-256.)  Plaintiff that reported she had lost a job due to anger issues. She also reported that she had been taking psychiatric medication obtained elsewhere, and that she had better control of her emotions and better energy with medication. (Tr. 255.)  On examination, Dr. Bilsa reported that Plaintiff had an anxious, dysphoric mood and rapid speech, but also good grooming, good eye contact, calm psychomotor activity, an appropriate affect, a logical and goal-directed thought processes, and normal attention span.  (*Id*.)  Dr. Bisla continued Plaintiff's current treatment.  (Tr. 256.)

Dr. Bisla examined Plaintiff again in September 2009.  (Tr. 257-258.)  Plaintiff reported that she was "doing well," that her depression had not been bothering her, and that she had no problems other than irritability, which she attributed to her menstrual period.   (Tr. 257.)   Dr. Bisla reported that Plaintiff had an euthymic mood, good grooming, good eye contact, calm psychomotor activity, an appropriate affect, normal speech, logical and goal-directed thought processes, and normal attention span. (Tr. 257.)  Dr. Bisla noted that Plaintiff's mood was better although she experienced menstrual-related anger "a few days" monthly.  (Tr. 258.)  Dr. Bisla continued Plaintiff's current treatment and added medication (Klonopin) for menstrual-related irritability. (*Id*.)

Dr. Bisla next examined Plaintiff in April 2010.  (Tr. 259-260.)  Plaintiff reported that medication was effective, but that she had difficulty affording Effexor. (Tr. 259.) Dr. Bilsa  reported  that  on  examination  Plaintiff  had  an  anxious  mood,  hyperactive

1  psychomotor activity, rapid speech, good grooming, good eye contact, an appropriate
2  affect, a logical and goal-directed thought processes, and normal attention span.
3  (Tr. 259).  Dr. Bisla prescribed psychiatric medication, noting that Plaintiff's compliance
4  to treatment was poor due to her inability to afford Effexor.  (Tr. 259-260.)

5      Dr. Bisla examined Plaintiff in May 2010.  (Tr. 261-262.)  Plaintiff reported
6  increased anxiety and depression and an inability to maintain a job since discontinuing
7  psychiatric medication due to her inability to afford it.  Dr. Bisla recommended that
8  Plaintiff seek treatment through an indigent care mental health agency, but Plaintiff
9  resisted based on a reported past "bad experience at one agency."  (Tr. 262.)  On
10  examination, Plaintiff had a sad mood, easy distraction and poor concentration, a labile
11  affect, and rapid speech.  Plaintiff was also alert and oriented, demonstrated good eye
12  contact, had a normal gait, had logical thought processes, could perform normal
13  calculations, had an average fund of knowledge, and her insight, impulse control, and
14  judgment were intact. (Tr. 261.) Dr. Bisla assessed a GAF score of 55, noting a previous
15  GAF of 75.  He concluded that Plaintiff was not doing well because she was not taking
16  prescribed medications. (Doc. 261-62.)

17      Dr. Bisla examined again Plaintiff in September 2010.  (Tr. 268-269.)  Plaintiff
18  reported experiencing anger and anxiety despite taking prescribed psychiatric medication
19  regularly.  (Tr. 268.)  On examination she had an irritable mood, a labile affect, rapid
20  speech, limited attention and concentration; she was also alert and oriented, demonstrated
21  good eye contact, had a normal gait, had a logical thought processes, and her insight and
22  judgment were intact. (Tr. 268.) Dr. Bisla assessed a GAF score of 55, noting a previous
23  score of 75, and concluded that Plaintiff was experiencing "partial benefit" from
24  medication.  Dr. Bisla continued Plaintiff's treatment.  (Tr. 268.)

25      Dr. Bisla next saw Plaintiff in October 2010 to complete "forms for her attorney."
26  (Tr. 266-67.)   Plaintiff reported experiencing anger and anxiety despite taking her
27  prescribed medication regularly.  (Tr. 266.)  Dr. Bilsa examined Plaintiff and reported
28  that she had an anxious, irritable mood, a labile affect, rapid speech, fidgetiness, easy

distraction, and limited concentration.   (*Id.*)   Plaintiff was also alert and oriented, demonstrated good eye contact, had a normal gait, logical thought processes, and her insight and judgment were intact.  (Tr. 266.).   Dr. Bisla assessed a GAF score of 55, noting a previous score of 75.  (*Id.*)  He concluded that Plaintiff was experiencing "partial benefit" from medication and continued treatment.  (*Id.*)

On October 7, 2010, Dr. Bisla completed a "Medical Assessment of the Patient's Ability to Perform Work Related Activity."  (Tr. 291-92.)  Dr. Bisla found that Plaintiff had moderate limitations ("an impairment which affects but does not preclude ability to function") in deterioration of personal habits and in her ability to perform simple tasks. (Tr. 291.)  He also found that Plaintiff had moderately severe limitations ("an impairment which seriously affects ability to function") in her abilities to: understand, carry out, and remember instructions; perform complex tasks; perform repetitive tasks; and perform varied tasks.  (*Id.*)   In addition, Dr. Bisla found that Plaintiff had severe limitations ("extreme impairment of ability to function" in her abilities to: relate to other people; attend to daily activities, such as going to meetings, working around the house, and socializing; respond appropriately to supervision; respond appropriately to coworkers; respond to customary work pressures; complete a normal workday/workweek without interruptions from psychologically based symptoms; and perform at a consistent pace without an unreasonable number/length of rest periods.  (Tr. 291-92.)

Dr. Bisla next examined Plaintiff in July 2011.  (Tr. 293-294.)  Plaintiff reported decreased anger with compliance to treatment, but increased stress due to financial difficulty related to her spouse not working.  (Tr. 293.)  On examination she had an anxious, irritable mood, a labile affect, rapid speech, fidgetiness, easy distraction, limited concentration, but she was alert and oriented, demonstrated good eye contact, had a normal gait, had logical thought processes, and her insight and judgment were intact. (*Id.*)  Dr. Bisla assessed a GAF score of 55, noting a previous GAF score of 75. (*Id.*)  He concluded that Plaintiff was receiving "partial benefit" from medication and continued treatment, noting her compliance to treatment was "fair."  (*Id.*)

**B.      Mary Downs, Ph.D, Agency Reviewing Physician**

On August 11, 2010, Mary Downs, Ph.D, a state agency psychologist, completed an assessment based on her review of the records.  (Tr. 58-60.)  Dr. Downs found that Plaintiff had affective and anxiety disorders that were "not severe." (Tr. 60.)

**C.      Adrianne Gallucci, Psy.D., Agency Reviewing Physician**

On November 29, 2010, Adrianne Gallucci, Psy.D, a state agency psychologist, reviewed the record and completed an assessment.  (Tr. 67-68.)  Dr. Gallucci noted that medication kept Plaintiff's mood stable and concluded that Plaintiff had affective and anxiety disorders that were not severe mental impairments.  (Tr. 68.)

**D.      Third-Party Statement**

In a Third-Party Report, dated May 26, 2010, Plaintiff's friend Matthew Garcia indicated that Plaintiff had difficulty with anxiety and "outbursts with others." (Tr. 185-187.)  He also reported that Plaintiff cared for her personal needs without difficulty (Tr. 181), performed household chores without help or encouragement (Tr. 182), prepared simple meals (Tr. 182), attended "[a]ll needs" of her six-year-old son, including transporting him to and from school and playing with him (Tr. 180-181, 183-184), cared for a pet (Tr. 181), drove an automobile (Tr. 183), and went shopping. (Tr. 183-184.)  He also indicated that Plaintiff did not need "special reminders" to care for her personal needs, to take medication, or to go places.  (Tr. 182, 184.)  He further stated that Plaintiff could go places alone (Tr. 183-184), manage her personal finances (Tr. 183), and pay attention for five hours.  (Tr. 185.)  He further noted that Plaintiff's condition did not affect her abilities to remember, complete tasks, understand, or follow instructions.  (*Id.*)

**E.      Plaintiff's Statement**

In a Function Report, dated October 2, 2010, Plaintiff reported that she had anxiety, difficulty getting along with others, and a lack of motivation.  (Tr. 220, 225-226.)  She also reported that she cared for her personal needs without difficulty (Tr. 221-222), performed household chores without help or encouragement (Tr. 223), prepared simple meals (Tr. 222), cared for her son, including "everything a [six-year-]old needs[,]"

such as walking him to and from school, shopping for his school clothing and supplies, assisting him with homework, taking him to the park, and attending his school events. (Tr. 221, 223-224.)  Plaintiff also stated that she cared for pets (Tr. 221, 224), crocheted (Tr. 224), drove an automobile "if [she absolutely had] to" (Tr. 223), and went shopping. (Tr. 223.)  She also reported that she did not need special reminders to care for her personal needs, to take medication, or to go places (Tr. 222, 224), that that she could go places alone (Tr. 223-224), manage her personal finances (Tr. 224), and pay attention for a "normal length of time." (Tr. 225.)  She also reported that her condition did not affect her abilities to remember, complete tasks, concentrate, understand, or follow instructions. (*Id.*)

**III.    Administrative Hearing Testimony**

Plaintiff, represented by counsel, appeared and testified at the August 9, 2011 administrative hearing.  (Tr. 42.)  No other witness testified at the hearing.  Plaintiff was in her mid-forties at the time of the administrative hearing.  (Tr. 32.)  She had a high school education plus "one year of college" (Tr. 160), and had past work experience as an after-school care manager/childcare leader.  (Tr. 31, 152, 155, 160.)

Plaintiff testified that she could not maintain employment because she experienced depression and anxiety, for which she took medication.  (Tr. 48-52.)  She testified that she had "low energy," sleep problems, stress, anxiety attacks, and that she sometimes got "real upset about things," and "blurt[ed] out things she shouldn't say." (Tr. 50.)  Plaintiff also testified that she resided with her spouse and her seven-year-old son (Tr. 45), had a valid driver's license, and drove an automobile "when [she had] to." (Tr. 51, 53.)  She stated that she cared for her son, including taking him to and from school, the movies, a park, and a skate park. (Tr. 51, 53-54.)  She also stated that she shopped (Tr. 51, 53), and occasionally dined out with a friend.  (Tr. 52.)

**IV.    The ALJ's Decision**

A claimant is considered disabled under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A) (nearly identical standard for supplemental security income disability insurance benefits).   To determine whether a claimant is disabled, the ALJ uses a five-step sequential evaluation process.   *See* 20 C.F.R. §§ 404.1520, 416.920.

### A.   Five-Step Evaluation Process

In the first two steps, a claimant seeking disability benefits must initially demonstrate that she is not presently engaged in a substantial gainful activity, and  that her impairment or combination of impairments is severe.  20 C.F.R. § 404.1520(a) (c).  If a claimant meets steps one and two, she may be found disabled in two ways at steps three through five.   At step three, she may prove that her impairment or combination of impairments meets or equals an impairment in the Listing of Impairments found in Appendix 1 to Subpart P of 20 C.F.R. pt. 404. 20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is presumptively disabled.  If not, the ALJ determines the claimant's residual functional capacity (RFC).  At step four, the ALJ determines whether a claimant's RFC precludes her from performing her past work. 20 C.F.R. §  404.1520(a)(4)(iv).   If the claimant establishes this prima facie case, the burden shifts to the government at step five to establish that the claimant can perform other jobs that exist in significant number in the national economy, considering the claimant's RFC, age, work experience, and education. If the government does not meet this burden, then the claimant is considered disabled within the meaning of the Act.

### B.   The ALJ's Application of Five-Step Evaluation Process

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period.  (Tr. 26.)  At step two, the ALJ found that Plaintiff had the following severe impairments: "depression, anxiety, bipolar disorder, and obsessive-compulsive disorder."  (Tr. 26.)  At the third step, the ALJ found that the severity of Plaintiff's impairments did not meet or medically

1    equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

2    (*Id*.)  The ALJ next concluded that Plaintiff retained the RFC to "perform a full range of

3    work at all exertional levels but with the following nonexertional limitations: the claimant

4    is limited to simple, repetitive, unskilled work."  (Tr. 28.)   The ALJ concluded that

5    Plaintiff could not perform her past relevant work.  (Tr. 32.)  At step five, relying on the

6    Medical-Vocational Guidelines, 20 CFR pt. 404, subpt. P, app. 2, § 204.00, the ALJ

7    concluded that Plaintiff could perform other "jobs that exist in significant numbers in the

8    national economy."  (*Id*)  The ALJ concluded that Plaintiff was not disabled within the

9    meaning of the Act.  (Tr. 33.)

10   **V.    Standard of Review**

11        The district court has the "power to enter, upon the pleadings and transcript of

12   record, a judgment affirming, modifying, or reversing the decision of the Commissioner,

13   with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The district

14   court reviews the Commissioner's final decision under the substantial evidence standard

15   and must affirm the Commissioner's decision if it is supported by substantial evidence

16   and it is free from legal error.[3]  *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996);

17   *Ryan v. Comm'r of Soc. Sec. Admin*., 528 F.3d 1194, 1198 (9th Cir. 2008).  Even if the

18   ALJ erred, however, "[a] decision of the ALJ will not be reversed for errors that are

19   harmless."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

20        Substantial evidence means more than a mere scintilla, but less than a

21   preponderance; it is "such relevant evidence as a reasonable mind might accept as

22   adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)

23   (citations omitted); *see also Webb v Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).  In

24   determining whether substantial evidence supports a decision, the court considers the

---

25
26        [3]  Plaintiff asserts that the "Commissioner proposes that judicial review is limited
     only to determining whether substantial evidence supports agency action."  (Doc. 28 at
27   3.)  The Court rejects this assertion.  Although the "Standard of Review" section of the
     Commissioner's brief (Doc. 27 at 9) only discusses the substantial evidence component
28   of judicial review, her brief addresses whether the ALJ erred and asserts that the "ALJ's
     decision was supported by substantial evidence and is a correct application of the law and
     regulations."  (Doc. 27 at 27.)

1  record as a whole and "may not affirm simply by isolating a specific quantum of

2  supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal

3  quotation and citation omitted).   The ALJ is responsible for resolving conflicts in

4  testimony, determining credibility, and resolving ambiguities.  *See Andrews v. Shalala*,

5  53 F.3d 1035, 1039 (9th Cir. 1995).  "When the evidence before the ALJ is subject to

6  more than one rational interpretation, [the court] must defer to the ALJ's conclusion."

7  *Batson v. Comm'r of* Soc. *Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) (citing

8  *Andrews*, 53 F.3d at 1041).

9      The court "must judge the propriety of [administrative] action solely by the

10  grounds invoked by the agency."  *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

11  If "those grounds are inadequate or improper, the court is powerless to affirm the

12  administrative action by substituting what it considers to be a more adequate or proper

13  basis."  *Id.; see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (stating that

14  the court is "constrained to review the reasons the ALJ asserts" in support of his

15  decision").   Although, when determining whether the ALJ's disability determination is

16  free from legal error the court cannot affirm the ALJ's based on a ground upon which the

17  ALJ did not rely, the court must still review the entire record to determine whether

18  substantial evidence supports the ALJ's decision.  *See Orn*, 495 F.3d at 630.

19  **VI.    Plaintiff's Claims**

20      Plaintiff asserts that the ALJ erred in his assessment of the medical source opinion

21  evidence by rejecting Plaintiff's symptom testimony without providing clear and

22  convincing reasons, and by relying on the Medical-Vocational Guidelines, without the

23  testimony of a vocational expert, to find Plaintiff not disabled.  (Doc. 20-1 at 1-2.)[4]

24  Plaintiff asks the Court to remand this matter for a determination of disability benefits.  In

25  response, the Commissioner argues that the ALJ's decision is free from legal error and is

26  supported by substantial evidence in the record.  (Doc. 27.)  For the reasons discussed

27  _____

28      [4]  Plaintiff's opening brief is attachment 1 to her June 17, 2013 Notice of Errata. (Doc. 20, attachment 1.)  For ease of reference, the Court uses the CM/ECF designation, and thus refers to Plaintiff's opening brief as Doc. 20-1.

- 10 -

1  below, the Court reverses the Commissioner's determination and remands for further

2  proceedings.

### A.    Weight Assigned to Medical Source Opinions

4        In weighing medical source evidence, the Ninth Circuit distinguishes between

5  three types of physicians: (1) treating physicians, who treat the claimant; (2) examining

6  physicians, who examine but do not treat the claimant; and (3) non-examining physicians,

7  who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

8  1995). Generally, more weight is given to a treating physician's opinion. *Id*. The ALJ

9  must provide clear and convincing reasons supported by substantial evidence for

10 rejecting a treating or an examining physician's uncontradicted opinion. *Id.*; *Reddick v.*

11 *Chater*, 157 F.3d 715, 725 (9th Cir. 1998). An ALJ may reject the controverted opinion

12 of a treating or an examining physician by providing specific and legitimate reasons that

13 are supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211,

14 1216 (9th Cir. 2005); *Reddick*, 157 F.3d at 725.

15       Opinions from non-examining medical sources are entitled to less weight than

16 treating or examining physicians. *Lester*, 81 F.3d at 831. Although an ALJ generally

17 gives more weight to an examining physician's opinion than to a non-examining

18 physician's opinion, a non-examining physician's opinion may nonetheless constitute

19 substantial evidence if it is consistent with other independent evidence in the record.

20 *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). When evaluating medical

21 opinion evidence, the ALJ may consider "the amount of relevant evidence that supports

22 the opinion and the quality of the explanation provided; the consistency of the medical

23 opinion with the record as a whole; [and] the specialty of the physician providing the

24 opinion . . . ." *Orn,* 495 F.3d at 631.

### B.    The ALJ's Assessment of Medical Source Opinion

26       Plaintiff alleges that ALJ erred in discounting Dr. Bisla's opinion regarding her

27 mental functional ability. (Doc. at 20-1 at 11-21.) The ALJ discounted Dr. Bisla's

28 October 2010 assessment that Plaintiff was severely limited in her ability to complete a

normal workday on a consistent basis on the ground that Dr. Bisla's report relied heavily on Plaintiff's subjective reports of symptoms and limitations, which the ALJ found unreliable.  (Tr. 30-31.)  The ALJ also explained that Dr. Bisla had assessed GAF scores that were inconsistent with "severe" symptoms, that the evidence showed that Plaintiff's symptoms "wax[ed] and wan[ed]," and that Dr. Bisla's assessment was inconsistent with the "greater evidence of record, including his own treating records."  (Tr. 31.)

When there is a conflict between the opinions of a treating physician and an examining physician, or between the opinion of a treating physician and objective evidence in the record as a whole, the ALJ may disregard the opinion of the treating physician if he sets forth "'specific and legitimate reasons supported by substantial evidence in the record for doing so.'"  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir.2001) (quoting *Lester*, 81 F.3d at 830); s*ee Batson*, 359 F.3d at 1195 (stating that an ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings").  Here, the treating physician's assessment of severe limitations was in conflict with the assessments of reviewing physicians Dr. Gallucci and Dr. Downs (finding that Plaintiff's mental impairments were not severe), and with the Function Reports completed by Plaintiff and Mr. Garcia (finding that that Plaintiff's condition did not affect her abilities to remember, complete tasks, concentrate, understand, or follow instructions).  Accordingly, the ALJ had to provide specific and legitimate reasons, supported by substantial evidence in the record, for discounting Dr. Bisla's assessment.  *See Tonapetyan*, 242 F.3d at 1148.

As discussed below, the ALJ gave legally sufficient reasons that are supported by substantial evidence in the record for giving "little weight" to Dr. Bisla's October 2010 assessment, including that: his opinion was inconsistent with his treatment notes; Dr. Bisla's opinion was inconsistent with the GAF scores he assessed; and his opinion

1    was largely based on Plaintiff's subjective complaints which the ALJ properly

2    discredited.[5]

3                    1.      **Inconsistencies with the Treatment Notes**

4           The ALJ found that Dr. Bisla's treatment notes did not support his October 2010

5    assessment of moderately-severe to severe limitations, and the ALJ discussed the

6    treatment notes that he identified as inconsistent with that assessment.[6]   (Tr. 28-30.)

7    Specifically, the ALJ noted that Dr. Bisla's treatment notes indicated that Plaintiff failed

8    to follow-up on Dr. Bisla's recommendations, which indicated that her symptoms might

9    not have been as severe as Dr. Bisla assessed.  (Tr. 29-30.)  The ALJ also noted that

10   Dr. Bisla's treatment records indicated that when Plaintiff complied with treatment and

11   took her medication she had better control of her emotions and had more energy.

12   (Tr. 30.)   "Impairments that can be controlled effectively with medication are not

13   disabling for the purpose of determining eligibility for SSI benefits."  *Warre v. Comm'r*

14   *of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).   The ALJ cited several

15   instances when Plaintiff reported "doing well" or showed improvement on the medication

16   regimen for her mental impairments.  (Tr. 30, 257, 259, 268, 293.)   Evidence that an

17   impairment can be controlled by treatment supports the ALJ's finding that Plaintiff was

18   not as severely impaired as Dr. Bisla found in his October 2010 assessment.  *See Odle v.*

19   *Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming a denial of benefits and noting that

20   the claimant's impairments were responsive to medication).  Evidence that medication

21   effectively controlled Plaintiff's symptoms is substantially supported by the record and is

22   _____

23          [5]   Although the ALJ only had to provide specific and legitimate reasons for
     discounting Dr. Bisla's opinion, his reasons for discounting Dr. Bisla's assessment also
24   satisfy the clear and convincing standard.  *See Orn*, 495 F.3d at 632 (an ALJ must give
     "clear and convincing reasons" for rejecting a treating physician's uncontradicted
25   opinion).

26          [6]   The ALJ's discussion of the treatment notes that he found inconsistent with
     Dr. Bisla's assessment of severe mental limitations did not appear on the same page of
27   his decision on which the ALJ discounted Dr. Bisla's assessment.  The ALJ's discussion
     of the inconsistent treatment notes appeared earlier in the ALJ's decision.  (Tr. 30-31);
28   *see Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) (an ALJ must discuss and evaluate
     the evidence that supports his step three finding, but need not do so under a particular
     heading).

1    a legally sufficient reason for assigning less weight to Dr. Bisla's October 2010
2    assessment.

3         The ALJ further noted that, contrary to Dr. Bisla's assessment that Plaintiff had
4    "moderately-severe to severe limitations" in her abilities to concentrate, understand, and
5    carry out and remember instructions, Dr. Bisla's treatment notes indicated that Plaintiff's
6    "overall thought content [was] normal, [her] thought process [was] logical, [and her]
7    insight and judgment [were] intact."  (Tr. 30.)  The record contains substantial evidence
8    in support of the ALJ's determination.  As the ALJ noted, Dr. Bisla's treatment notes
9    indicated that Plaintiff had normal thought content, a logical thought process, and that her
10   judgment and insight were intact.  (Tr. 30, 255, 257, 259, 261, 266, 268, 286, 293, 296.)
11   Dr. Bisla's treatment notes also indicated that Plaintiff was alert and oriented,
12   demonstrated a euthymic mood, had an appropriate affect, had good
13   grooming/appearance, maintained good eye contact, had normal and calm psychomotor
14   activity/gait, had normal speech, good intelligence, an average fund of knowledge, and
15   intact insight.  (Tr. 255, 257, 259, 261, 266, 268, 285-286, 293, 296.)

16        The ALJ reasonably concluded that Dr. Bisla's treatment notes were inconsistent
17   with his assessment that Plaintiff was moderately-severe to severely limited in her mental
18   functioning abilities.  Thus, the ALJ properly discounted Dr. Bisla's October 2010
19   opinion on that basis.  *See* 20 C.F.R. § 404.1527(d)(4) (stating that an ALJ must consider
20   consistency of opinion with the record as a whole); *Batson*, 359 F.3d at 1195 (stating that
21   an ALJ may discredit treating physician opinions that are conclusory, brief, and
22   unsupported by the record as a whole).  Although the treatment records may also support
23   an interpretation more favorable to Plaintiff, the ALJ's interpretation was rational and the
24   court "must uphold the ALJ's decision where the evidence is susceptible to more than
25   one rational interpretation."  *Magallanes*, 881 F.2d at 750; *see Batson*, 359 F.3d at 1198
26   (9th Cir. 2004).

27

28

## 2. Plaintiff's GAF Scores

The ALJ also discounted Dr. Bisla's October 2010 assessment as incompatible with the GAF score of 55 that Dr. Bisla assessed during the same time period he completed the October 2010 assessment. (Tr. 31.) The ALJ also noted that Dr. Bisla assessed GAF scores ranging from 55 to 75 during the course of treatment. (Tr. 30.) Plaintiff argues that the GAF scores do not provide a legally sufficient basis for discounting Dr. Bisla's assessment of Plaintiff's ability to work because a GAF score is a subjective rating of a claimant's overall level of functioning in a treatment setting and does not correlate directly to a claimant's ability to work. (Doc. 20-1 at 16.) "The Ninth Circuit has countenanced an ALJ's reliance on GAF scores as evidence that contradicts a physician's opinion of severe limitation." *Nelson v. Colvin*, 2013 WL 4010860, at *7 (D. Ariz. Aug. 6, 2013) (citing *Melton v. Comm'r of Soc. Sec. Admin.*, 442 Fed. App'x 339, 341 (9th Cir. 2011)); s*ee also Mann v. Astrue*, 2009 WL 224635, at *2 (C.D. Cal. Jul. 24, 2009) (citing *Olds v. Astrue*, 2008 WL 339757, at *4 (D. Kan. Feb. 5, 2008)) (a GAF score is evidence to be considered with the rest of the record)).

Here, the ALJ found that Plaintiff's GAF scores, including the score of 55 assessed in October 2010, suggested no significant functional impairments that would preclude substantial gainful activity. (Tr. 30-31.) The ALJ properly considered Plaintiff's GAF scores in weighing the medical opinion evidence. *See Burkin v. Astrue*, 2012 WL 21916984, at *6 (D. Ariz. Jun. 14, 2012) (stating that "the fact that [the claimant] routinely had GAF scores that reflected no more than moderate symptoms or limitations was a legitimate reason for the ALJ to consider when determining whether [the claimant] was unable to work"). Plaintiff's GAF scores ranging from 55 to 75 could reasonably be perceived as inconsistent with Dr. Bisla's opinion that Plaintiff was moderately-severe to severe limitations in her mental functioning and that she was severely limited in her ability to work. (Tr. 30, 291-92.) Her GAF scores of 55 to 75

1    indicate only mild to moderate symptoms.[7]   Additionally, there is no evidence that the

2    ALJ treated the GAF scores as dispositive of the issue of disability or otherwise accorded

3    them improper weight; rather, they were one piece of evidence upon which the ALJ

4    relied in making the disability determination.  (Tr. 31.)  Thus, the ALJ did not err in this

5    regard.  *See Pelletier v. Astrue*, 2012 WL 135992, at *5 (D. Ariz. Jan. 18, 2012) (ALJ

6    properly gave little weight to physician's opinion after finding it inconsistent with the

7    claimant's GAF scores and overall record of mental health treatment).

8                    **3.    Medical Opinion Based on Subjective Complaints**

9           The ALJ also discounted Dr. Bisla's assessment because it appeared to be based

10   mainly on Plaintiff's subjective complaints.   (Tr. 31.)   Because the ALJ properly

11   discredited Plaintiff's subjective complaints as discussed in Section VI(D)(2) below, the

12   ALJ did not err in this regard.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219,

13   1228 (9th Cir. 2009) (ALJ properly discounts a physician's opinion that is based solely

14   upon claimant's self-reporting if ALJ concludes that claimant's self- reporting is not

15   credible); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (rejecting

16   physician's opinion in part because it was based on claimant's subjective complaints, not

17   on new objective findings); *Tonapetyan*, 242 F.3d at 1149 (medical opinion premised on

18   subjective complaints may be disregarded when record supports ALJ in discounting

19   claimant's credibility).

20   _____

21        [7] A GAF score between 51 and 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social
22   occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Michaels v. Colvin*, 2014 WL 37744, at *1(C.D. Cal. Jan. 6, 2004) (citing Diagnostic and
23   Statistical Manual of Mental Disorders (4th ed. 2000) (DSM-IV)).

24        A GAF "score of 61–70 reflects mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well." *Nelson*, 2013
25   WL 4010860, at *7 (citing DSM-IV).

26        A GAF between 71 and 80 indicates that if symptoms are present, they are transient and expectable reactions to psychological stressors (e.g., difficulty concentrating
27   after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork). *Bizona v. Astrue,* 2011WL
28   1656075, at *2 n.3 (C.D. Cal. May 3, 2011) (citing DSM-IV).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

#### 4.    Varying Degree of Symptoms

The ALJ also stated that he discounted Dr. Bisla's October 2010 assessment because Plaintiff's "moods 'wax[ed] and wan[ed]' based on social and economic stressors." (Tr. 31.) Plaintiff asserts that the ALJ erred in relying on variation in Plaintiff's symptoms to reject Dr. Bisla's assessment because occasional symptom-free periods are not inconsistent with disability. (Doc. 20-1 at 17.) The Commissioner appears to argue that the ALJ did not err in this regard. However, the Court cannot discern the basis for that argument from the Commissioner's analysis, which consists of a general discussion of mood disorder. (Doc. 27 at 16-17.) Nonetheless, even if the ALJ erred in this regard, the error was harmless because, as discussed in Section VI(B)(1)-(3), the ALJ gave other legally sufficient reasons for discounting Dr. Bisla's assessment.

### C.    The ALJ's Reliance on Reviewing Physicians' Opinions

Plaintiff also argues that the ALJ erred in relying on the opinions of reviewing state agency physicians Dr. Gallucci and Dr. Downs as substantial evidence in support of his RFC and disability determinations. (Doc. 20-1 at 18.) Dr. Gallucci and Dr. Downs found that Plaintiff's affective and anxiety disorders were not "severe." (Tr. 60, 68.) The ALJ accorded "greater weight" to the opinions of Dr. Gallucci and Dr. Downs because those opinions were "not inconsistent with the greater objective record, particularly regarding the finding that the claimant has no significant limitations precluding all work, even taking into account the problems with her moods, anxiety, and bipolar disorder." (Tr. 31.) The opinions of non-examining physicians may serve as substantial evidence when they are consistent with independent clinical findings or other record evidence. *See Thomas*, 278 F.3d at 957; Social Security Ruling (SSR) 96-6p, 1996 WL 374180, at *2-3 (1996) (findings made by state agency physicians must be treated as expert opinion evidence).

Here, the opinions of Dr. Gallucci and Dr. Downs were consistent with the record evidence and constituted substantial evidence upon which the ALJ could rely in support of his disability determination. *See Thomas*, 278 at 957 ("The opinions of non-treating or

1    non-examining physicians may also serve as substantial evidence when the opinions are

2    consistent with independent clinical findings or other evidence in the record.").

3           Their opinions were consistent with Dr. Bisla's treatment notes.  (*See* Section

4    VI(B)(1).)  Additionally, Dr. Gallucci's and Dr. Downs's assessments were supported by

5    Plaintiff's own reports that she did not need reminders to care for her personal needs, to

6    take medication, or to go places (Tr. 190, 192, 222, 224), that she could go out alone

7    (Tr. 191-192, 223-224), manage personal finances (Tr. 191, 224), and pay attention for

8    three hours or a "normal length of time" (Tr. 193, 225), and that her condition did not

9    affect her abilities to remember, complete tasks, concentrate, understand, or follow

10   instructions.  (Tr. 193, 225.)  Mr. Garcia similarly indicated that Plaintiff did not need

11   any reminders to care for her personal needs, to take medication, or to go places

12   (Tr. 182, 184), that she could go out alone (Tr. 183-184), manage personal finances

13   (Tr. 183), and pay attention five hours (Tr. 185), and that her condition did not affect her

14   abilities to remember, complete tasks, understand, or follow instructions.  (Tr.185.)

15          Therefore, the opinions from reviewing state agency physicians were consistent

16   with the medical evidence and with evidence of Plaintiff's activities during the relevant

17   time period.  (Tr. 30.)  The ALJ reasonably gave "greater weight" to those opinions.  *See*

18   20 C.F.R. § 404.1527(f)(2)(i) ("State agency medical . . . consultants . . . are highly

19   qualified physicians . . . who are also experts in Social Security disability evaluation");

20   *Thomas,* 278 F.3d at 957 (reviewing source opinions may serve as substantial evidence

21   when they are consistent with independent clinical findings or other evidence in the

22   record).

23          The Court rejects as meritless Plaintiff's contention that the opinions of

24   Dr. Downs and Dr, Gallucci did not constitute substantial evidence because they failed to

25   explain how the evidence supported their conclusions.  (Doc. 20-1 at 19.)  Dr. Downs and

26   Dr. Gallucci both noted Plaintiff's improvement, including a stable mood, with

27   compliance to psychiatric medication.  (Tr. 60, 68.)  Plaintiff's argument that the

28   opinions of Dr. Downs and Dr. Gallucci do not constitute substantial evidence because

1    their opinions were based on a limited portion of the record also lacks merit.  The ALJ

2    properly considered these opinions even though Dr. Downs's opinion was rendered at an

3    early step in the administrative process before Dr. Bisla issued his 2010 assessment of

4    Plaintiff.  The ALJ was required to review the evidence in determining Plaintiff's RFC

5    and whether she was disabled under the Act.  *See* 20 C.F.R. §§ 404.1527(e)(2),

6    404.1546(c).

7         Plaintiff also argues that Dr. Gallucci's and Dr. Downs's opinions that Plaintiff did

8    not have any severe impairment do not support the ALJ's RFC and disability

9    determinations because the ALJ found that Plaintiff had the following severe

10   impairments: "depression, anxiety, bipolar disorder, and obsessive-compulsive disorder."

11   (Doc. 20-1 at 19 (citing Tr. 26).)   The ALJ gave "greater weight" to the reviewing

12   doctors' opinions because he found them more consistent with the record evidence than

13   the opinion of Dr. Bisla.  (Tr. 31.)  Although the ALJ found Plaintiff more impaired than

14   the reviewing doctors, Plaintiff has not cited any authority indicating that an ALJ cannot

15   moderate "the full adverse force of a medical opinion" in a manner that is more favorable

16   to a claimant.  *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (stating that an

17   ALJ does not commit reversible error by tempering extremes of medical opinion that are

18   adverse to claimant's application for disability benefits).

19              **D.    Plaintiff's Subjective Complaints**

20                   **1.    The Two-Step Analysis**

21         An ALJ engages in a two-step analysis to determine whether a claimant's

22   testimony regarding subjective pain or symptoms is credible.  *Lingenfelter v. Astrue*, 504

23   F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant

24   has presented objective medical evidence of an underlying impairment 'which could

25   reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* at 1036

26   (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  The claimant

27   is not required to show objective medical evidence of the pain itself or of a causal

28   relationship between the impairment and the symptom.   *Smolen*, 80 F.3d at 1282.

1   Instead, the claimant must only show that an objectively verifiable impairment "could

2   reasonably be expected" to produce his pain. *Lingenfelter*, 504 F.3d at 1036 (quoting

3   *Smolen*, 80 F.3d at 1282); *see also Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d at 1160-

4   61 (9th Cir. 2008) ("requiring that the medical impairment could reasonably be expected

5   to produce pain or another symptom . . . requires only that the causal relationship be a

6   reasonable inference, not a medically proven phenomenon").  If a claimant produces

7   medical evidence of an underlying impairment that is reasonably expected to produce

8   some degree of the symptoms alleged, and there is no affirmative evidence of

9   malingering, an ALJ must provide "clear and convincing reasons" for an adverse

10  credibility determination.  *See Smolen*, 80 F.3d at 1281; *Gregor v. Barnhart*, 464 F.3d

11  968, 972 (9th Cir. 2006).

12      In evaluating a claimant's credibility, the ALJ may consider the objective medical

13  evidence, the claimant's daily activities, the location, duration, frequency, and intensity

14  of the claimant's pain or other symptoms, precipitating and aggravating factors,

15  medication taken, and treatments for relief of pain or other symptoms.  *See* 20

16  C.F.R. § 404.1529(c); *Bunnell*, 947 F.2d at 346.  An ALJ may also consider such factors

17  as a claimant's inconsistent statements concerning his symptoms and other statements

18  that appear less than candid, the claimant's reputation for lying, unexplained or

19  inadequately explained failure to seek treatment or follow a prescribed course of

20  treatment, medical evidence tending to discount the severity of the claimant's subjective

21  claims, and vague testimony as to the alleged disability and symptoms.  See *Tommasetti*

22  *v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Smolen*, 80 F.3d 1273, 1284 (9th Cir.

23  1996).  If substantial evidence supports the ALJ's credibility determination, that

24  determination must be upheld, even if some of the reasons cited by the ALJ are not

25  correct.  *Carmickle*, 533 F.3d at 1162.

26      Relying on the Ninth Circuit decision in *Bunnell*, the Commissioner appears to

27  argue that an ALJ need not provide "clear and convincing" reasons for discrediting a

28  claimant's testimony regarding subjective symptoms, and instead must make findings

- 20 -

that are "'supported by the record' and 'sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds.'" (Doc. 27 at 18-19 (citing *Bunnell*, 947 F.2d at 345-46).)  In *Bunnell*, the court did not apply the "clear and convincing" standard, and the Commissioner argues that because no subsequent en banc court has overturned *Bunnell*, its standard remains the law of the Ninth Circuit.  (Doc. 18 at 8-9.)  Although the Ninth Circuit has not overturned *Bunnell*, subsequent cases have elaborated on its holding and have accepted the clear and convincing standard.  *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011); *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *Lingenfelter*, 504 F.3d at 1036; *Reddick*, 157 F.3d at 722; *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989).  Accordingly, the Court will determine whether the ALJ provided clear and convincing reasons for discounting Plaintiff's credibility.

### 2.    Plaintiff's Pain and Symptom Testimony

Although the ALJ stated that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms alleged," he found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment." (Tr. 29.)  Plaintiff argues that the ALJ did not give clear and convincing reasons for discrediting her symptom testimony.[8]

Because there was no record evidence of malingering, the ALJ was required to provide clear and convincing reasons for concluding that Plaintiff's description of her functional limitations was not wholly credible.  The ALJ first stated that he discounted Plaintiff's symptom testimony because the objective medical record did not support the

---

[8]  Plaintiff first argues that the ALJ's conclusion that Plaintiff's testimony was not credible to the extent that it was inconsistent with the ALJ's RFC assessment is improper circular reasoning.  (Doc. 20-1 at 22-23).  Even if the ALJ erred in relying on circular reasoning to discredit Plaintiff's credibility, any error was harmless because, as discussed in Section VI(D)(2), he provided other clear and convincing reasons for discrediting Plaintiff's symptom testimony.

level of symptoms alleged.  (Tr. 30-31.)  Contrary to Plaintiff's assertion, the ALJ cited evidence in the medical record that supported his conclusion.  The ALJ noted that Dr. Bisla's treatment notes indicated that his examinations of Plaintiff revealed logical thought processes, intact insight, intact judgment, and GAF scores between 55 and 75.  (Tr. 30-31.)  Although an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of symptoms, *see Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001); *Fair*, 885 F.2d at 602, the lack of objective medical evidence supporting the claimant's claims may support the ALJ's finding that the claimant is not credible.  *See Batson*, 359 F.3d at 1197.

The ALJ further explained that he discounted Plaintiff's subjective complaints because her reported limitations were inconsistent with her daily activities.  (Tr. 29.)  The ALJ noted (Tr. 27-29), and substantial evidence in the record indicates, that Plaintiff cared for her personal needs without difficulty (Tr. 181, 189, 221-222), performed household chores without help or encouragement (Tr. 182, 190, 223), prepared simple meals (Tr. 182, 190, 222), had a valid driver's license and drove an automobile (Tr. 51, 53, 183, 191, 223), cared for pets, (Tr. 181, 189, 221, 224), crocheted (Tr. 224), watered her lawn (Tr. 190), went shopping (Tr. 51, 53, 183-184, 191-192, 223), and occasionally dined out with a friend (Tr. 52.)

The ALJ found it significant that Plaintiff cared for her young son including bathing and dressing him, transporting him to and from school, assisting him with homework, shopping for his school clothing and supplies, attending his school events, taking him to movies, taking him to the park, and playing with him.  (Tr. 51, 53-54, 180-181, 183-184, 188-189, 191-192, 221, 223-225.)  The ALJ found that Plaintiff's daily activities suggested that she had "greater mental capacities than she stated in the testimony and written statements." (Tr. 29.)  Plaintiff argues that the ALJ did not provide any evidence in support of his statement that she spent a "substantial part of the day" engaged in daily activities that were inconsistent with disability.  (Doc. 20-1 at 24.)  The ALJ cited to the evidence in the record regarding Plaintiff's daily activities, and based on

his review of the record, concluded that Plaintiff spent a substantial part of the day doing those activities.  The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities.  *See Andrews*, 53 F.3d at 1039.  Although the evidence of Plaintiff's daily activities may also support an interpretation more favorable to her, the ALJ's interpretation was rational, and the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Magallanes*, 881 F.2d at 750; *see Batson*, 359 F.3d at 1198.

The Ninth Circuit has found that a claimant's activities, including childcare, were legally sufficient reasons for discounting a claimant's subjective complaints.  *See Conley v. Astrue*, 471 Fed. App'x 758, 759 (9th Cir. 2012) (unpublished) (finding that claimant's activities that included child care constituted legally sufficient reason for discounting subjective complaints); *Burch*, 400 F.3d at 681 (claimant's ability to interact with family members and daily activities that included household chores, handling finances, and caring for young children undermined claims of disability); *Rollins*, 261 F.3d at 857 (finding that disability claimant's symptom allegations were undermined by activities that included attending to the needs of two young children).  Accordingly, the ALJ properly considered Plaintiff's daily activities in his credibility analysis.

The ALJ next found that Plaintiff's credibility was diminished by evidence that she was "not entirely compliant" with treatment and that she did not "follow-up on recommendations" made by her treating physician.  (Tr. 29.)  Noncompliance with treatment may form the basis for an adverse credibility finding.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (stating that "an unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment . . . can cast doubt on the sincerity of the claimant's pain testimony); *Burch*, 400 F.3d at 681 (lack of consistent treatment may be considered in assessing credibility as to severity of pain); *Bunnell*, 947 F.2d at 346 (en banc) (noncompliance with prescribed course of treatment is a relevant factor in assessing credibility).

1       Here, the ALJ noted that Plaintiff was not fully compliant with taking her

2    medication and also noted that Plaintiff reportedly could not afford her medication.

3    (Tr. 29 (citing hearing exhibit 1F at 12).)   The ALJ stated that, although he did not "fault

4    the claimant for her lack of insurance or funds, the evidence show[ed] that claimant was

5    unwilling to seek out other alternative modes of treatment, such as free clinics."  (Tr. 29.)

6    The record indicates that Plaintiff sometimes did not take her medication due to limited

7    funds.  (Tr. 259, 261-62, 293.)  The record also reflects that Dr. Bisla recommended that

8    Plaintiff seek treatment at free mental health clinics.  (Tr. 261-62.)  Plaintiff, however,

9    was unwilling to go to "AHCCCS related psychiatric services agencies" because she had

10   had a bad experience with a free clinic.  (Tr. 262.)   The record does not contain any

11   information about this alleged bad experience.  Here, there is no evidence that Plaintiff

12   sought no-cost or low-cost treatment, or that she was denied treatment by any medical

13   facility for financial reasons.  *See Keokham v. Astrue*, 2008 WL 4196972, at *7 (E.D.

14   Cal. 2008) (affirming ALJ's adverse credibility determination based on claimant's non-

15   compliance with treatment; although claimant could not always afford medication, there

16   was no evidence that she sought free or low cost medical assistance) (citing Social

17   Security Ruling 82-59 (noting that clinics, charitable and public assistance agencies must

18   be explored)).

19       Plaintiff also argues that the ALJ erred in relying on her noncompliance with

20   treatment to discredit her symptom testimony because noncompliance with treatment is a

21   reflection of Plaintiff's mental impairments.   (Doc. 20-1 at 26.)    Although the

22   Commissioner does not dispute that such can be the case, she argues that the record in

23   this case does not support that conclusion. (Doc. 27 at 22-23.)  The Court agrees that the

24   record supports the ALJ's determination that Plaintiff was sometimes noncompliant with

25   her medication and indicates that Plaintiff was able to follow her course of treatment

26   despite her impairments.  Plaintiff and Mr. Garcia reported that Plaintiff had no difficulty

27   following instructions (Tr. 185, 193, 225), and that she did not need reminders to take her

28   medications.  (Tr. 182, 190, 222.)  Plaintiff's noncompliance with her medication and

1   with Dr. Bisla's recommendation that she seek treatment at free clinics because she

2   lacked resources to pay for medication is substantially supported by the record and a clear

3   and convincing reason for discrediting Plaintiff's symptom testimony.  *See Burch*, 400

4   F.3d at 681.

5         The ALJ also discounted Plaintiff's complaints of disabling symptoms because

6   Dr. Bisla's treatment notes reflected that when Plaintiff took her medication as prescribed

7   she had better control of her emotions and more energy.  (Tr. 30.)  The treatment notes

8   indicate that Plaintiff's medications were helpful in controlling her symptoms and giving

9   her more energy without side effects.  (Tr. 30, 255, 257, 259, 285.)  Although the

10  treatment notes also indicate that Plaintiff was not entirely symptom free when she

11  followed the prescribed course of treatment, substantial evidence supports the ALJ's

12  conclusion that medication helped control Plaintiff's symptoms.  *See Batson*, 359 F.3d at

13  1198 (citing *Andrews*, 53 F.3d at 1041).  "Impairments that can be controlled effectively

14  with medication are not disabling for the purpose of determining eligibility" for disability

15  benefits under the Act.  *Warre*, 439 F.3d at 1006 (citing *Brown v. Barnhart*, 390 F.3d

16  535, 540 (8th Cir. 2004));  *see Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983)

17  (affirming a denial of benefits and noting that the claimant's impairments were

18  responsive to medication).  Evidence that medication effectively controlled Plaintiff's

19  symptoms is substantially supported by the record and a legally sufficient reason for

20  discounting Plaintiff's credibility.

21        In conclusion, the ALJ's credibility determination is free from legal error and

22  supported by substantial evidence in the record.  The ALJ's credibility determination is

23  affirmed.

24        **E.      Reliance of the Medical and Vocational Guidelines**

25        Finally, Plaintiff argues that that the ALJ erred at step five of the sequential

26  evaluation by relying on the Medical-Vocational Guidelines (the Grids) without

27  consulting a vocational expert to determine whether she was disabled under the Act

28  because the Grids do not account for Plaintiff's significant non-exertional limitations

resulting from her mental impairments.  (Doc. 20-1 at 27.)  The Commissioner responds that Plaintiff's mental impairments were not so severe that they created significant non-exertional limitations, therefore, the use of the Grids was appropriate.  (Doc. 27 at 24-25.)

At step five, the ALJ considers whether claimant can perform work that exists in the national economy considering the claimant's RFC, age, education, and work experience.  The Commissioner can make a step-five determination by either using "the testimony of a vocational expert or by reference to the Medical Vocational Guidelines."  *Thomas*, 278 F.3d at 955.  The Grids "consist of a matrix of [the four factors including claimant's RFC, age, work experience, and education] and set forth rules that identify whether jobs requiring a specific combination of these factors exist in significant numbers in the national economy."  *Heckler v. Campbell*, 461 U.S. 458, 461–462 (1983).  "The [Social Security Administration's] need for efficiency justifies use of the grids at step five where they completely and accurately represent a claimant's limitations."  *Tackett*, 180 F.3d at 1101 (internal citation omitted).

The Grids should not be used if they "fail accurately to describe a claimant's particular limitations."  *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985).  An alleged non-exertional limitation, however, "does not automatically preclude application of the grids.  The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations."  *Tackett*, 180 F.3d at 1102.  "A vocational expert is required only when there are significant and 'sufficiently severe' nonexertional limitations not accounted for in the grid."  *Hoopai v. Astrue*, 499 F.3d 1071, 1075-76 (9th Cir. 2007) (stating that when a claimant has "significant non-exertional limitations," the ALJ cannot rely solely on the grids); *see also Burkhart*, 856 F.2d at 1340 ("the grids are inapplicable [w]hen a claimant's non-exertional limitations are sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations") (internal quotations omitted).  Non-exertional limitations that may make reliance the Grids inappropriate include poor vision, *see Tackett*, 180 F.3d at 1101-02, pain, *see Perminter v. Heckler*, 765 F.2d 870, 872 (9th

Cir. 1985), and "'mental, sensory, postural, manipulative, or environmental (e.g., inability to tolerate dust or fumes) limitations.'" *Burkhart*, 856 F.2d at 1340-41 (quoting *Desrosiers v. Sec'y of Health and Human Servs*, 846 F.2d 573, 579 (9th Cir. 1988)).

Here, the ALJ found that Plaintiff had the RFC to perform "simple, repetitive, unskilled work" at "all exertional levels."[9]   (Tr. 29.)   At step four, the ALJ found that Plaintiff was unable to perform her past "semi-skilled" work as an "after-school care manager/child care leader."  (Tr. 31.)  However, at step five of the evaluation process the ALJ did not adequately explain how Plaintiff nonetheless could perform other work in the national economy.   The ALJ erred by applying the Grids without sufficiently explaining their application despite record evidence suggesting that the Grids may not encompass Plaintiff's non-exertional limitations, including her "limited concentration," that the ALJ noted in his decision (Tr. 30), and her limitations in her ability to "respond appropriately to supervision, co-workers, and a usual work situation," that the Commissioner noted in her memorandum in support of the Commissioner's decision. (Doc. 27 at 25.)  Because Plaintiff had non-exertional limitations that are not adequately accounted for in the Grids, the ALJ was required to obtain the testimony of a vocational expert.  *See Perkins v. Colvin*, 2013 WL 3930407, at *10 (D. Ariz. Jul 30, 2013) (finding that ALJ erred by applying the Grids at step five when there was evidence that claimant had non-exertional limitations related to his cognitive impairments and remanding to the Commissioner for further proceedings); *Pagan-Velez v. Astrue*, 2010 WL 3789486, at *10 (D. Ariz. Sept. 22, 2010) (ALJ erred by applying Grids when he found that claimant had numerous impairments that prevented her from performing her past work, but did not explain show she could perform other work in the national economy despite those impairments and remanding to the Commissioner for further proceedings).

---

[9]   In a footnote, Plaintiff asserts that the ALJ's determination that she was limited to "unskilled" work was not a substitute for a mental functional capacity determination. (Doc. 20-1 at 29 n.16.)   Plaintiff, however, does not raise this issue as a ground for reversing the ALJ's disability determination and states that the issue is "not essential to this appeal."  (*Id.*)  Accordingly, the Court will not further consider this issue.

**VII.    Conclusion**

Based on the foregoing, the ALJ erred at step five of the sequential evaluation process by failing to consider the testimony of a vocational expert.  The Court reverses the Commissioner's decision and remands to the ALJ pursuant to sentence four of 42 U.S.C. § 405(g).   On remand, the ALJ is directed to conduct further proceedings, including obtaining evidence from a vocational expert at step five of the sequential evaluation process.

Accordingly,

**IT IS ORDERED** that the Commissioner's determination is **REVERSED** and this matter is **REMANDED** to the Commissioner for further proceedings consistent with this Order.   The Clerk of Court shall enter judgment accordingly and terminate this matter.

Dated this 6th day of March, 2014.

Bridget S. Bade
United States Magistrate Judge